2013, 5-0-7-0. We'll hear from Mr. Wells when he is ready.  Your Honor, if it may please the Court, my name is John Wells. I'm appearing on behalf of Sgt. Charles Russell, United States Marine Corps, former Marine Corps. This case is about a lot of things, but including post-traumatic stress disorder. What do we know about that right now? What do we know about this case? We know that Sgt. Russell suffers from post-traumatic stress disorder as a result of his service in Somalia and in Iraq. We know that he was seriously injured. We know that the military has not been as good as they should about diagnosing post-traumatic stress disorder, and that was reflected in the National Defense Authorization Act of 2010. Do you agree that someone can suffer from PTSD and still be fit for duty? Hypothetically, yes. It depends on the degree of PTSD. I think in the course of our lives, a lot of us do suffer from PTSD. I lived through Katrina, so I probably have some PTSD myself, and I'm also a veteran, so I'm sure I have some. But my degree of PTSD and perhaps the degree of everybody else is not to the point where it would make us unfit for duty, unable to function. In Sgt. Russell's case, it has. And I would support that with the evidence of Dr. Ginsberg, which was included, the fact that the VA now has found him disabled for PTSD. And as his life continues, it gets worse. We're in the situation of having to put in for 100% total disability on him. Isn't that a finding of fact as to whether he was unfit at the time of his discharge? It is, Your Honor. And don't we owe deference to the court with respect to a finding of fact? I think you do owe deference to the Court of Federal Claims who found that, in fact, he was suffering from PTSD at the time of discharge. They, as you remember in their opinion... But the question is unfit for duty at that time. Due to PTSD, sorry. Let me ask you this, because I think it would lead to your answer. Did the Physical Evaluation Board make a fitness determination with regard to PTSD? No, they did not. And the reason they didn't is because they found that there was no evidence of PTSD. It was the court... But wait a minute. But they didn't make a finding about PTSD. That's correct. So if they didn't, how could they find he was fit for duty in spite of PTSD if they hadn't found that there was PTSD? That's the point, Judge. They can't. It's you know... I'm going to ask the government the same question. They have to find, there has to be a finding of PTSD at that point. Then it's the PEB's or Physical Evaluation Board's job to go and figure out, A, was it unfit for duty? And B, if he was unfit for duty, what the percentage of disability is and whether or not he should be retired. And then my next question is, how can the Court of Federal Claims say that the Navy found he was fit for duty in spite of PTSD if the board couldn't do that? And that, again, is part of our point, Judge. I think that the... And please, I'm not saying it against Judge Smith. He was very sympathetic and I think he... If you read the language, his opinions, he's very sympathetic towards Sergeant Russell. And I think he feels that he has to do what he did. But without... What the court did initially was to find that the PEB acted arbitrary and capriciously and without substantial evidence. And that was a good finding in our opinion. But since the PEB never actually considered fitness or unfitness for duty in light of the PEB, in light of the court's finding of post-traumatic stress disorder, then what should have happened... Well, in light of... Not in light of, they never considered it. That's right. And what they should have done was remanded. What page of the record is this discussion by the PEB of the PTSD or what's PTSD? I'm sorry, Judge. I think my hearing is going a little bit. Did you say... I asked if the page of the record... What page of the record do we find the PEB discussion of PTSD? Thank you, Your Honor. It would be... The report started at A1065. And you bear with me for just a second. All right. If you look at page A10167, Judge... I'm sorry, 10167? Yes, sir. Starting down at the third full paragraph, the board determined diagnosis three PTSD is category three, et cetera, et cetera. Well, that doesn't seem to be a finding that he didn't have PTSD. I'm sorry, Judge. I missed what you said. That paragraph says the board determined diagnosis three PTSD is category three and does not preclude continued performance. That seems to be accepting the notion that he had some PTSD, no? Well, it later went on to say, though, that in the last paragraph in that column, he was not able to... Talking about Dr. Ginsberg, he was not able to state definitively whether the member had a diagnosis of PTSD at that time, with that time being the time of discharge. I don't think that they disputed the fact that Sergeant Russell had PTSD. Their dispute was whether or not it existed at the time of discharge. Didn't you concede that there was nothing in the record showing that Sergeant Russell was unable to function? I think I concede that he was able to function, but not that he was able to function as a Sergeant NCO in charge of a fire team, which is what his MOS was, as a military operational specialty. So he could do woodworking, which in fact is a good therapy for PTSD. He could probably, at that particular time, work in the chapel, which is not a bad therapy for PTSD. He couldn't go and lead a squad in a house-to-house fight in Fallujah. Well, that sounds like a dispute about what fit-for-duty means, and it seems to be a dispute about whether fit-for-duty means to these fit for his former duty post, as opposed to some other activity. And that's exactly right, sir. If I'm flying aircraft, I actually drove ships, but if I was flying aircraft and all of a sudden I can't fly aircraft anymore, that doesn't mean that I can't sit around and drive a desk. What it does mean is I can't go back and do what the military hired me to do. If you're flying aircraft and you're disabled from doing that, but you can still perform desk duty, does that entitle you to disability retirement? Yes, sir, it could. And the reason being, I was hired to fly an aircraft to be a jet pilot. There's plenty of desk jockeys around. They don't need me in that particular position. I'm being paid. I've got what they call a designator, or in the Marines, they call a military operational specialist, and that's what I'm supposed to be doing. I count against the numbers for that designator or that military operational specialist. And if I can't do that, if I can't be retrained in something else, like driving a submarine, then I should be retired, and I should be retired because of that disability, because it was that disability that prevented me from flying the airplane. I hope that made some sense to you. Is there some definition in the regulations as to what fit for duty means? Yes, there is. Where do we find that? And I don't believe it's in the record. It would be in the Secretary of Navy Instruction 1850.4 series. And what does that say? Judge, you asked me a question I can't answer. I don't remember the exact wording. Basically, what it's going to say is fit for duty or worldwide assignment, but I don't have the exact definition with me. Okay. But just coming back to this page that you cited, what is the reference to diagnosis three in that first paragraph or the middle paragraph there? The board determined diagnosis three, PTSD. What is diagnosis three? Diagnosis three would be the PTSD, sir. Are they referring to a particular diagnosis by Dr. Ginsburg? Or what's the reference there? That would have been as submitted to the Physical Evaluation Board. It would be on one of the submission documents, Judge. The way they do that is they consider every, and I'm sure that's in the record, they consider every diagnosis. In his particular case, there were two diagnoses that related to his hand and one to the PTSD. So diagnosis three is referring to a particular diagnosis? Yes, sir, and that would be the PTSD. And is that the diagnosis by Dr. Ginsburg? That would be the diagnosis by Dr. Ginsburg and the VA, yes, sir. But that seems to suggest that the Ginsburg diagnosis was category three PTSD, and they don't seem to dispute that in that paragraph. No, again, but what they do dispute is whether or not it existed at the time of discharge, which their mission is to determine what was there at the time of discharge. So, for example, if I hurt my hand a day before I'm discharged, then that would be within their purview. If there's no evidence to show that that hand injury didn't occur until six months after discharge, they could say, okay, yes, you have a hand injury, but it did not occur at time of discharge. Mr. Wells, the Court of Federal Claims Opinion states, plaintiff's counsel conceded in oral argument that Sergeant Russell left the Navy because, quote, he wanted to go home. Yes, sir. Unquote. And it refers to plaintiff's decision as voluntary. And just as part of some of the problems that you get into with PTSD. I mean, what they did, and this is one of the reasons why the NDAA 2010 was passed, or that provision on reviewing some of the discharges, is the kid goes, he's been hurt, he's psychologically hurt, he's confused, he wants to go home. And they say, do you want to go home or do you want to stick around for umpteen months to do a medical evaluation for it? And he's going to go home. It's typical of PTSD. When I was trying to go for my last job in the Navy, I commanded a Navy and Marine Corps Reserve Center. I saw people coming back on crutches. What are you doing back here? Why aren't you getting it fixed? I wanted to go home. They said it would take years. So you wanted to save some rebuttal time? In an order to save time and money. And that's what happened. You wanted to save rebuttal argument time. Oh, I'm sorry. Yes, sir. We'll do that for you. Mr. McElmail? Yes, thank you, Your Honor. Good morning, and may it please the Court. The Court should affirm the judgment of the Court of Federal Claims. It is not the case that the PED denied that Sergeant Russell had PTSD at time of discharge. It looks that at least the PED accepted for purposes of analysis that he did. And therefore, character- I'm not sure that that's correct. They seem to be saying that Dr. Ginsburg diagnosed him with PTSD, but that was December 2003, and that that's not evidence that he had PTSD at the time of discharge. And Judge Smith in the Court of Federal Claims, looking at the record, concluded that that was wrong and that he did have PTSD at the time of discharge. I guess what Judge Wallach's question suggests is if the PED went forward on a wrong theory, that is, lack of PTSD at the time of discharge, shouldn't it be asked to re-examine all of this and determine whether the PTSD that he had at that time was sufficiently disabling that it rendered him unfit for duty? That's the question. And my square question was, as I understand it, the PED did not make a fitness determination, a fitness determination with regard to PTSD at the time of discharge. Well, to your Honor's question, the PED did make a fitness determination with respect to PTSD at time of discharge, and that was the purpose, and that is reflected in the Category 3. The Category 3 finding, which is a reference to Secretary of Navy Instruction 1850.4D4111, and that has four categories, A, B, C, D, and Category 1 is all unfitting conditions, Category 2 are those conditions that are contributing to the unfitting condition, and Category 3, which is what the PED determined, those conditions that are not separately unfitting and do not contribute to the unfitting condition, which is precisely what the PED says on page A10167 that Commander Wells was talking about. And finally, Category 4, conditions which do not constitute a physical disability. If the PED had neither assigned a category to PTSD or perhaps assigned Category 4 to that condition, the PED did not determine whether PTSD at time of discharge made Sergeant Russell unfit for duty, but it did. It went further. It said that there was no evidence of any PTSD symptoms or diagnosis, so it found no doctor's diagnosis of PTSD despite Sergeant Russell's diagnosis. Having been in the hospital for a month in Bethesda, having been in occupational therapy at Pendleton in the months prior to discharge, well, up until October, I believe, but more importantly, because this is a question about fitness, which, by the way, is defined, not fitness itself, I've also seen that definition. I don't have it, but... What are the categories that you are reading from? Where in the record are those four categories appear? It's not in the record, Your Honor. Well, actually, it's not in the appendix. It is in the administrative record. The whole SEC NAB instruction, well, 1850.4E is in the administrative record. Are you saying that Category 3 is a category that says he's not unfit for duty? Yes, and that's what... That's in the analysis, though. Let me walk you back to the findings, okay? It's a couple of pages earlier. Finding, after care review, is unfit to continue Naval service because of a physical disability. Yes. No mention of PTSD. That's because the P.E.B. did not find that he was separately unfit because of PTSD, or that PTSD contributed to the unfitting condition, the unfitting condition being his hand, his hand malate deformity. So what the P.E.B. was doing here was what it was asked to do on remand, which was to determine whether Sergeant Russell, at time of discharge, was what rating of disability. And because it's first step, and this is also what 411 says, only Category 1 conditions will be rated by the P.E.B., and Category 1 is all unfitting conditions, because it must answer that question first, and by the way, the statute also lays it out that way. The P.E.B. was asking itself, according to the record of his conditions at time of discharge, was he unfit for duty such that a rating would have to be applied? It answered that question yes with respect to his hand, and no with respect to PTSD. With respect to his hand, it assigned a 0% rating. It never assigned a rating to PTSD because it never found him unfit for duty. And part of that was that there was no diagnosis from the time, and the second part is there were no symptoms. And that is not surprising. It is not surprising that at time of discharge, less than a year from the injury, there were no symptoms of PTSD. And Commander Wells explained this to the Director of the Council on Petition for Relief, where he wrote, the Diagnostic and Statistical Manual of Mental Disorder, and this, by the way, is on page 10207, he's referring to the DSM-IV, both recognized delayed onset and delayed onset PTSD at least six months past before the symptoms manifest. In fact, the symptoms may not be evident for years. So although the VA screened him positive for PTSD in June of 2004, in December of 2003, when he was being discharged, nobody had reported any symptoms existing at that time of Sergeant Russell's PTSD, not even Sergeant Russell. He was not manifesting any of the symptoms of PTSD that the DSM-III, which is not in the record, talks about. I bring up the DSM-IV. I bring that up because Commander Wells does in his brief. It's not in the administrative record, but Sergeant Russell, he did not complain, he did not manifest any of the symptoms of PTSD, and even if he had, the question would have been, and this is from the General Criteria for Making Unfitness Determinations, would that have made him unable to reasonably perform the duties of his office? I'm determined, according to this, a service member shall be considered unfit when the evidence establishes that the member, due to physical disability, we can read mental disorder too, is unable to reasonably perform the duties of her office grade, rank, or rating. Where do I find what Ginsburg said about the PTSD? What page is that? That is in the latter part of the joint appendix. Dr. Ginsburg's Sergeant Russell begins at page 10171. Where does he talk about the PTSD? He talks about it at, it looks like, 10202. It's right about just at the end. He talks about, he discusses Axis 1, Post Traumatic Stress Disorder. I don't see where he says that he's talking about the PTSD.  That Sergeant Russell was manifesting symptoms of PTSD, but even if he were, the question would be at time of discharge. Detachment, disassociation from others, those are PTSD symptoms. I meant, Your Honor, at time of discharge, because Dr. Ginsburg started examining Sergeant Russell in 2008. But even if Sergeant Russell had been manifesting symptoms of PTSD, that would not answer whether he were unfit for duty. The PEB would have to determine whether he was reasonably able to perform the duties of his office grade, rank. Now, with respect to his hand, Commander Wells, what Commander Wells was saying is accurate with respect to his hand, the PEB compared his maladeformity to his MOS and found that he was unfit for duty. Presumably, it would have... This PEB report seems to be, what's bothering me, it seems to be somewhat contradictory. In the one paragraph, it said he had PTSD Category 3, and that doesn't preclude the continued performance of duties. And yet, in the last paragraph, they say, well, we're going to discount Ginsburg because he didn't have a diagnosis at the time of discharge. Yes, I see the tension there, and that's why I say it looks like what the PEB did was to accept that Sergeant Russell had PTSD at time of discharge, which is reasonable to infer, because in June of 2004, which is roughly a year after the injury, he was screened positive for PTSD. And like Commander Wells said, there was nothing else going on. I leave Somalia aside because he was fit for duty in Iraq well after Somalia. But it stands to reason that the only... was the May 2003, and I mean June 2004, was the May 2003 injury to his hand. So, it might have been reversible for the PEB to have found that he did not have PTSD at time of discharge, but it did not do that. It appears to have accepted that he had PTSD at time of discharge, asked itself the fitness determination question, which it answered in the negative, that it was not unfit, and therefore never got to a rating. But let's say that it actually got to a rating. Oh, by the way, before I leave that point, nor does Commander Wells point to any page in this appendix or anywhere in the record where it shows that, or even indicates, that Sergeant Russell was unable to reasonably perform the duties of his office because of PTSD in December 2003. This is not a case like Santiago, which one of us cite in our briefs, in which the, I forget whether it was the Navy, but the board ignored evidence of hypertension. Nowhere does Sergeant Russell say, here's the evidence of Sergeant Russell's unfitness because of PTSD at time of discharge. But Sergeant Russell has to go much further. If this were to be remanded, it would have to go much further and demonstrate to the Navy that he was 30% disabled because of PTSD, because of course, he's not challenging the hand rating, and that was 0%, so he has to get 30%. There is no my brief at page, well, I addended. Occupational and social impairment with an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. And there's a list of symptoms, including mild memory loss. Now, the only thing that comes close to a symptom of PTSD during his active duty is on page 10162, which is part of the health assessment, in which he answered the question whether he was having difficulty remembering either during, both during deployment and now, which was in September 2003. He answered, yes, he was during his deployment, but not now. So, I don't say that he didn't have PTSD at that time. What I am saying is that even that reflects that there were no symptoms of PTSD upon which... What was the date of diagnosis 3? The date of diagnosis 3? Yeah. Well, if your honor is referring to a doctor's diagnosis... No, it's the one referred to in the PED diagnosis 3. What's the date of... Well, the PED found that in January 2010. Well, that was when the order was... By referring to a diagnosis by Dr. Ginsberg, what was the date of the Ginsberg diagnosis? That's referring to a specific diagnosis, diagnosis 3, right? Yes, I assume that's correct. Correct. What was the date of it? That must have been 2008, because Dr. Ginsberg hadn't seen... But there was a June... Hadn't seen him until 2008. There was a June 2004 positive screening. If that is a diagnosis, I... That could be what the... It could be what the PED was referring to, or the PED could have been referring to the Sergeant Russell's position that he had had a diagnosis. I see that amount of time. Thank you, Mr. McElmail. Thank you, your honor. Mr. Wells has a little rebuttal time, a little more than two minutes rebuttal time. Yes, thank you, your honor. What's the date of diagnosis 3? It would have been June of 2004. That would have been the VA diagnosis after the pre-screening. That's diagnosis 3? Yes, sir. Okay. That was PTSD. We've come a long way since George Patton slapped a soldier, and... But it's still not a perfect determination. You can't find PTSD with a blood test. It's... To some extent, it's as much art as science. What we do know is the PTSD will not manifest itself immediately, but it does go back to the stressor. The stressor, which in this case could have been burying the dead Somalis, or it could have been his hand being mangled by a grenade. Either one of those would constitute a stressor. It won't manifest itself immediately. That's why there was no diagnosis immediately. Now, I would point your honor, however... The diagnosis 3, which you say is June of 2004, is category 3 and doesn't preclude continued performance of duties. So aren't they saying that maybe he had category 3 PTSD at the time of the discharge, but that didn't prevent the performance of the duties? Again, that's a problem of being somewhat more art than science, because you don't know when it's going to be triggered. As an example, I had an individual who was a first responder on the Stark after it was hit with an Iraqi missile. Went for about two different tours with no problems. Then there was a small stack fire on another ship, and he just tripped offline. It's... In a lot of ways, it's an accident waiting to happen. Somebody comes back normally, spends six, eight months, a year, two years, and then wakes up in the middle of the night, tries to strangle his wife because he believes that it's the enemy coming through the wire. And those are some of the problems with it. Judge, I would ask, if you get a chance, because I'm almost out of time, to look at A10209. It's the comments of the denial of the petition review, and basically says there's no evidence, and it's pre-separation med records that documents either symptoms or diagnosis of PTSD. And while the possibility exists Mr. Russell may currently suffer from delayed onset, there was no evidence of significant impairment. And that's the truth. But there would not have been in the delayed onset. That's what's so terrible about this disorder. Your Honors, I'm out of time. I thank you for your patience, and Sergeant Russell, thank you also. Thank you, Mr. Wells. We'll take the case under advisement. Thank you, sir.